DEFENDANT'S
EXHIBIT

B

**HCDistrictclerk.com** RHODES, TONYA P vs. CROSSCOUNTRY     3/10/2026
MORTGAGE LLC
Cause: 202611852   CDI: 7   Court: 133

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## NOTICES
No Notices found.

## SUMMARY

### CASE DETAILS

| | | | |
|---|---|---|---|
| **File Date** | 2/23/2026 | | |
| **Case (Cause) Location** | | | |
| **Case (Cause) Status** | Active - Civil | | |
| **Case (Cause) Type** | TRESPASS TO TRY TITLE | | |
| **Next/Last Setting Date** | 3/23/2026 | | |
| **Jury Fee Paid Date** | N/A | | |

### CURRENT PRESIDING JUDGE

| | |
|---|---|
| **Court** | 133rd |
| **Address** | 201 CAROLINE (Floor: 11) HOUSTON, TX 77002 Phone:8329272480 |
| **JudgeName** | NICOLE V. PERDUE |
| **Court Type** | Civil |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| RHODES, TONYA P | PLAINTIFF - CIVIL | | JARRETT, LATOYA P |
| 17823 PUMPKIN VINE DRIVE, HOCKLEY, TX 77447 | | | |
| CROSSCOUNTRY MORTGAGE LLC | DEFENDANT - CIVIL | | |
| 1999 BRYAN STREET SUITE 900, DALLAS, TX 75201 | | | |
| RHODES, JAYLA | PLAINTIFF - CIVIL | | |
| 17823 PUMPKIN VINE DRIVE, HOCKLEY, TX 77447 | | | |
| NATIONSTAR MORTGAGE LLC | DEFENDANT - CIVIL | | |
| 211 E 7TH STREET SUITE 620, AUSTIN, TX 78701-3218 | | | |
| REIARI LLC | DEFENDANT - CIVIL | | |
| 720 BRAZOS STREET STE 1115, AUSTIN, TX 78701 | | | |
| CROSSCOUNTRY MORTGAGE LLC MAY BE SERVED WITH PROCESS THROUGH ITS | REGISTERED AGENT | | |
| 1999 BRYAN STREET SUITE 900, DALLAS, TX 75201-3136 | | | |

NATIONSTAR MORTGAGE LLC MAY BE SERVED    REGISTERED AGENT
WITH PROCESS BY ITS REGISTERED

    211 E 7TH STREET SUITE 620, AUSTIN, TX 78701-3218

REIARI LLC MAY BE SERVED WITH PROCESS    REGISTERED AGENT
THROUGH ITS REGISTERED AGENT

    720 BRAZOS STREET STE 1115, AUSTIN, TX 78701

## INACTIVE PARTIES

No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 3/9/2026 | ORDER EXTENDING TEMPORARY RESTRAINING ORDER SIGNED | 3/9/2026 | | 1 | | | |
| 3/9/2026 | ORDER SIGNED SETTING HEARING | 3/9/2026 | | 1 | | | |
| 2/24/2026 | HEARING HELD FOR ANOTHER COURT | | | 0 | | | |
| 2/24/2026 | ORDER SIGNED SETTING HEARING | 2/24/2026 | | 2 | | | |
| 2/24/2026 | EVIDENCE PRESENTED (BENCH HEARING) | | | 0 | | | |
| 2/24/2026 | APPEARANCE ON TEMPORARY INJ OR TEMPORARY RESTRAINING ORD | | | 0 | | | |
| 2/24/2026 | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | 2/24/2026 | | 2 | | | |
| 2/24/2026 | ORDER SETTING BOND SIGNED | 2/24/2026 | | 2 | | | |
| 2/24/2026 | BENCH HEARING ASSIGNED | | | 0 | | | |
| 2/23/2026 | ORIGINAL PETITION | | | 0 | | JARRETT, LATOYA P | RHODES, JAYLA |
| 2/23/2026 | ORIGINAL PETITION | | | 0 | | JARRETT, LATOYA P | RHODES, TONYA P |

## SETTINGS

| Date | Court | Post Jdgm | Docket Type | Reason | Results | Comments | Requesting Party |
|------|-------|-----------|-------------|--------|---------|----------|------------------|
| 3/09/2026 03:00 PM | 133 | | Law Day Docket | TEMPORARY INJUNCTION (MOTION FOR) | Re-Set | ORDER SIGNED | |
| 3/23/2026 03:00 PM | 133 | | Law Day Docket | TEMPORARY INJUNCTION (MOTION FOR) | | | |
| 2/24/2026 11:30 AM | 151 | | Ancillary Docket | TEMPORARY RESTRAINING ORDER (MOTION FOR) | Tried | GRANTED O/S 2/24/2026 | JARRETT, LATOYA P |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|------|--------|------------|--------|-----------|--------|--------|----------|----------|----------|-----------|
| CITATION | SERVICE RETURN/EXECUTED | | CROSSCOUNTRY MORTGAGE LLC MAY BE SERVED WITH PROCESS THROUGH ITS | 2/23/2026 | | 2/23/2026 | 2/26/2026 | | 74614537 | E-MAIL |
| 1999 BRYAN STREET SUITE 900 DALLAS TX 75201 | | | | | | | | | | |
| CITATION | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | NATIONSTAR MORTGAGE LLC MAY BE SERVED WITH PROCESS | 2/23/2026 | | 2/23/2026 | 2/26/2026 | | 74614538 | E-MAIL |

BY ITS
REGISTERED

211 E 7TH STREET SUITE 620 AUSTIN TX 78701

| CITATION CANCELLED BEFORE SERVICE SENT | ORIGINAL PETITION | NATIONSTAR MORTGAGE LLC MAY BE SERVED WITH PROCESS BY ITS REGISTERED | 2/23/2026 | | | 74614539 | E-MAIL |

211 E 7TH STREET SUITE 620 AUSTIN TX 78701

| CITATION SERVICE RETURN/EXECUTED | ORIGINAL PETITION | REIARI LLC MAY BE SERVED WITH PROCESS THROUGH ITS REGISTERED AGENT | 2/23/2026 | 2/23/2026 | 2/27/2026 | 74614540 | E-MAIL |

720 BRAZOS STREET STE 1115 AUSTIN TX 78701

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 125518495 | ORDER EXTENDING TEMPORARY RESTRAINING ORDER SIGNED | | 03/09/2026 | 1 |
| | ORDER SIGNED SETTING HEARING | | 03/09/2026 | |
| 125479267 | Plaintiffs' Motion to Extend Temporary Restraining Order | | 03/06/2026 | 5 |
| ·> 125479268 | Notice of Oral Hearing on Plaintiffs' Motion to Extend Temporary Restraining Order | | 03/06/2026 | 2 |
| ·> 125479269 | Proposed Order Granting Plaintiffs' Motion to Extend Temporary Restraining Order | | 03/06/2026 | 1 |
| 125386662 | Citation Executed - Reiari LLC | | 03/02/2026 | 2 |
| 125378627 | Citation Executed - Crosscountry Mortgage LLC | | 02/27/2026 | 2 |
| 125378630 | Citation Executed - Nationstar Mortgage LLC | | 02/27/2026 | 2 |
| 125290807 | ORDER SETTING BOND SIGNED | | 02/24/2026 | 2 |
| | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | | 02/24/2026 | |
| | ORDER SIGNED SETTING HEARING | | 02/24/2026 | |
| 125383728 | Clerks Certificate of Cash Deposit in Lieu of Injunction Bond Per Order of the Court | | 02/24/2026 | 1 |
| 125258085 | Plaintiffs Original Petition and Application for Temporary Restraining Order and Injunction Relief | | 02/23/2026 | 19 |
| ·> 125258086 | Affidavit In Support of Plaintiffs Original Petition and Application For Temporary Restraining Order and Injunctive Relief | | 02/23/2026 | 1 |
| ·> 125258087 | Exhibit A | | 02/23/2026 | 13 |
| ·> 125258088 | Exhibit B | | 02/23/2026 | 3 |
| ·> 125258089 | Exhibit C | | 02/23/2026 | 4 |
| ·> 125258090 | Exhibit D | | 02/23/2026 | 2 |
| ·> 125258091 | Exhibit E | | 02/23/2026 | 5 |
| ·> 125258092 | Proposed Order for Temporary Restraining Order Against Defendant Reiari LLC | | 02/23/2026 | 2 |

2/22/2026 6:35 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 111562428
By: Jarod Stirrup
Filed: 2/23/2026 12:00 AM

# 2026-11852 / Court: 133

## CAUSE NO. _____

| | | |
|---|---|---|
| **TONYA RHODES, JAYLA RHODES** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **CROSSCOUNTRY MORTGAGE, LLC,** | § | |
| **NATIONSTAR MORTGAGE LLC, AND** | § | |
| **REIARI, LLC** | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## PLAINTIFFS' ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUCTION RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, Tonya Rhodes and Jayla Rhodes (collectively referred to as "Plaintiffs"), complaining of CrossCountry Mortgage, LLC, Nationstar Mortgage LLC, and REIARI, LLC (collectively referred to as "Defendants"), and for cause of action would respectfully show unto the court the following:

### I. SECTION OF DISCOVERY LEVEL

1.1     Plaintiff pleads that discovery should be conducted in accordance with a discovery control plan under Texas Civil Procedure Rule 190.3.

### II. PARTIES AND SERVICE OF PROCESS

2.1     Plaintiff Tonya Rhodes (hereinafter referred to as "Plaintiff" and/or "Tonya") resides at 17823 Pumpkin Vine Drive, Hockley, Texas 77447, who is identified by Texas Driver's License Number xxx-xx-5026, and social security number xxx-xx-6633.

2.2     Plaintiff Jayla Rhodes (hereinafter referred to as "Plaintiff" and/or "Jayla") resides at 17823 Pumpkin Vine Drive, Hockley, Texas 77447, who is identified by Texas Driver's License Number xxx-xx-8091, and social security number xxx-xx-5641.

2.3    Defendant, CrossCountry Mortgage, LLC, (hereinafter referred to as "Defendant" and/or "CrossCountry Mortgage") may be served with process through its registered agent, C T Corporation System, addressed at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136 USA.

2.4    Defendant, Nationstar Mortgage, LLC, (hereinafter referred to as "Defendant" and/or "Nationstar Mortgage") may be served with process through its registered agent, Corporation Service Company, addressed at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218 USA.

2.5    Defendant, REIARI, LLC (hereinafter referred to as "Defendant" and/or "REIARI") may be served with process through its registered agent, Incorp Inc., addressed at 720 Brazos Street, Ste. 1115, Austin, Texas 78701, USA.

## III. JURISDICTION AND VENUE

3.1    This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition, arose, in whole or in part, in Harris County, Texas and the amount in controversy exceeds the minimal jurisdiction limits of the Court.

3.2    This Court has personal jurisdiction over Defendants because the acts and omissions complained of herein occurred in Texas, the Defendants conducted business in the past and/or presently conduct business in the State of Texas, have committed a tort, in whole or in part in Texas, are residents and citizens of Texas, and they had minimum contacts with the State of Texas during the period of time complained of herein.

3.3    Venue is properly laid in Harris County, Texas because all or a substantial part of Plaintiffs' causes of action arose is Harris County, Texas. Further, the real property in dispute is located in Harris County, Texas.

## IV. NATURE OF SUIT

4.1    This is a suit to enjoin and restrain the sale of Plaintiffs homestead by an illegitimate third party purchaser ("REIARI LLC") of the Property at the invalid January 6th, 2026 foreclosure auction of the Property.

4.2    Additionally, Plaintiffs request the extraordinary relief of rescission of the foreclosure sale of January 6th, 2026, and brings this lawsuit against Defendants, CrossCountry Mortgage, LLC and Defendant Nationstar Mortgage, LLC for breach of contract, mortgage fraud, violations of the Texas Property Code §51.002, and negligence supporting a claim under the Texas Deceptive Trade Practices Act (DTPA); violations of the Real Estate Settlement Procedures Act ("RESPA") (12 USC § 2605; 12 C.F.R. §§ 1024 et.seq.); and breach of duty of good faith and fair dealing; and actual damages and attorney fees.

4.3    In concert with the aforementioned request for the extraordinary relief to rescind a foreclosure and restrain any transfer and/or sale of the Property, Plaintiffs bring this lawsuit against Defendants for accounting.

## V. FACTUAL BACKGROUND

5.1    On or about October 30, 2023, Plaintiffs entered into a real estate purchase/sale transaction with Defendant CrossCountry Mortgage, LLC ("CrossCountry") to purchase the real property located at:

**Lot 17, Block 6, of WINDROW SEC 5, a subdivision in Harris County, Texas, according to the map or plat thereof as recorded in Film Code 697581, Map Records, Harris County, Texas.**

Also commonly known as: **17823 Pumpkin Vine Drive, Hockley, Texas 77447** (the "Property")

5.2    The sales price for the property was One Hundred Sixty-One Thousand Two Hundred Seventy-Three Dollars and 0/100 Cents ($161,273.00). Defendant CrossCountry Mortgage, LLC

Page 3

("CrossCountry") is Plaintiffs' mortgage lender in connection with the purchase. **See Exhibit A - a copy of the Deed of Trust attached herein as Exhibit A and incorporated fully by reference.**

5.3     Defendant Nationstar Mortgage, LLC ("Nationstar") is the servicer of Plaintiffs' mortgage loan.

5.4     The Property is Plaintiffs' homestead. Plaintiffs mortgage loan is at a fixed rate. Plaintiffs executed a mortgage loan and promissory note with CrossCountry on or about October 30, 2023. Under the terms of the Note, Plaintiffs' fixed monthly mortgage payment is $1,148.48. Additionally, the monthly mortgage payment is due on the first (1st) of every month with a grace period until the 15th of every month. **See Exhibit B - a copy of the Promissory Note attached herein as Exhibit B and incorporated fully by reference.**

5.5     Plaintiffs have made all mortgage payments timely since the inception of the loan and did not default on the loan. **See Exhibit C - a copy of Plaintiffs' bank statements attached herein as Exhibit C and incorporated fully by reference.** Additionally, Plaintiffs have an agreement with the City of Houston's Housing Authority ("Housing") whereby, Housing pays the majority of the Plaintiffs' mortgage directly to the lender's servicer. **See Exhibit D - a copy of Housing's payment statement on Plaintiffs' account, attached herein as Exhibit B and incorporated fully by reference.**

5.6     Despite Plaintiffs' timely payments and without prior notice, Defendants CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC proceeded with foreclosure of the Property. On or about Tuesday, January 6, 2026, the Property was sold at a foreclosure sale. **See Exhibit E - a copy of the Substitute Trustee's Foreclosure Sale Deed, attached herein as Exhibit E and incorporated fully by reference.**

Page 4

5.7     Plaintiffs were never provided with a Notice of Default, Notice of Acceleration, and/or Notice of Foreclosure Sale as required under the terms of the Deed of Trust and the Texas Property Code. Plaintiffs first became aware of the foreclosure sale only after receiving notice of an eviction proceeding.

5.8     Thereafter, Defendant REIARI, LLC purportedly purchased the Property at the foreclosure sale. Plaintiffs dispute the validity of the foreclosure and assert that the foreclosure sale was wrongful, invalid, and void due to Defendants' failure to provide proper notice and comply with statutory and contractual requirements. Additionally, the foreclosure was invalid because Plaintiffs did not default on the mortgage note.

## VI. ALL PARAGRAPHS INCORPORATED

6.1     Each of the proceeding and succeeding paragraphs are incorporated as part of the following causes of action.

## VII. CAUSES OF ACTION

7.1     **All paragraphs & Exhibits incorporated**. Each of the preceding and succeeding paragraphs are incorporated as part of the following causes of action. All exhibits are fully incorporated herein by reference.

### PLAINTIFF'S CLAIMS AND DEFENDANTS' VIOLATIONS

*A. Breach of Contract Against Defendant CrossCountry Mortgage, LLC.*

7.2     In the alternative and without waiving the foregoing, the Defendant CrossCountry Mortgage, LLC breached the agreement by failing to properly notify Plaintiffs about requirements for releasing the insurance proceeds constitutes a breach of the contract. Plaintiffs performed all of their obligations under the Agreement. However, Defendant CrossCountry Mortgage, LLC

breached the Agreement by misapplying the insurance proceeds to mortgage payments instead of releasing them for property repairs.

7.3     The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) material breach by the defendant and (4) damages sustained by the plaintiff as a result of that breach.

7.4     As a result of Defendant CrossCountry Mortgage, LLC's breach, Plaintiffs has suffered damages, including but not limited to delays in repairing the damaged property and potential additional property damage due to delayed repairs.

### B. RESPA (Real Estate Settlement Procedures Act) Violations against Defendant CrossCountry Mortgage, LLC and Defendant Nationstar Mortgage, LLC's violations Under RESPA.

7.5     Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, committed several violations under RESPA and its consumer protection statute, 12 U.S.C. § 2605. RESPA prohibits servicers from imposing charges for force-placed insurance unless specific notice requirements are met. Additionally, all charges related to force-placed insurance must be bona fide and reasonable. A servicer's failure to account for payments properly, leading to unnecessary force-placed insurance or other improper charges, may constitute a violation of RESPA . 12 USCS § 2605. RESPA defines "servicing" as receiving scheduled periodic payments from a borrower and making payments of principal, interest, and other amounts as required by the loan terms. *Martin v. New Century Mortg. Co., 377 S.W.3d 79.* If a servicer fails to properly account for and credit payments, this may constitute a servicing error. Under, §1024.35 Error resolution procedures.. borrowers may notify servicers of such errors through a "notice of error." Servicers are required to investigate and either correct the error or provide a written explanation of why no error occurred. Failure to comply with these obligations may result in liability under ( 12 USCS § 2605. f) . *Martin v. New Century Mortg. Co.,* 377 S.W.3d 79, §1024.35 Error resolution procedures..

7.6     Under 12 U.S.C. § 2605 (f), Regulation Z 24 C.F.R. § 3500, if the servicer fails to take one of the required actions within the time limits provided under the statute, under RESPA a borrower may recover:

      (a) Any actual damages suffered by the borrower,
      (b) If there is a pattern or practice of servicer noncompliance, additional damages not to exceed $2000, and
      (c) Attorney's fees and costs.

12 U.S.C. §§ 2605(f)(1) and (3). Here, Plaintiffs asserts that Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, have violated several RESPA procedures causing Plaintiffs to suffer actual damages. Therefore, Plaintiffs brings a private cause of action against Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, for its violation of 12 U.S.C. § 2605(e)(1((A) and (B) and 12 CFR §1024.39(a), by its failure to respond to the Plaintiffs' inquiries for information related to the servicing of their mortgage loan and disputed charges within the time constraints mandated under 12 U.S.C. § 2605(e)(1) and (2), and 12 CFR §§ 1024.35 and 1024.39.

7.7     Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC further violated the RESPA by its breach of its duty of good faith and fair dealing by not only failing to respond to the Plaintiffs' "Error Resolution Notice," inquiry, but further by failing to comply with the mandate under 12 CFR § 1024.39(a) that "a servicer shall establish or make a good faith effort to establish live contact with a delinquent borrower" within the mandated time constraints of this regulation, which resulted in the Plaintiffs being left in the dark by the mortgage loan servicer never advising Plaintiffs of loss mitigation and forbearance options available to them under 12 CFR §§1024.39 and 1024.41. As Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC are shrouded by evidence of its bad faith in dealing with the Plaintiffs, under the law it had "unclean hands." Finally, as the Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC never apprised the Plaintiffs of the above-referenced loss mitigation/forbearance options which

were available, the mandated written loss mitigation application and the procedures under 12 CFR §1024.41(a), (c), (d) were never triggered.

7.8    12 CFR § 1024.41(a) makes it clear that "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 USC 2605(f))." Therefore, Plaintiffs seek enforcement of these provisions. Based on the facts as alleged above, the Plaintiffs is entitled to bring a private cause of action for damages under 12 U.S.C. § 2605(f)(1) and (3) for:

> (a) their actual damages which resulted from the Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC (s);
> (b) any additional damages to the Plaintiffs, as the Court may allow, in the case of a pattern or practice of noncompliance with the requirements on this section, in an amount not to exceed $2,000; and
> (c) in the event the Plaintiffs are successful under this section, Plaintiffs are entitled to recover the costs of the action, together with any attorney's fees incurred in connection with such action as the Court may deem to be reasonable under the circumstances.

7.9    Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC engaged in a pattern and practice of noncompliance with its duty as a loan servicer, requiring that it respond to Plaintiffs as borrowers under 12 U.S.C. § 2605(e), which the uncontroverted evidence establishes that Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC violated by wholly failing to do the following:

> (a) Properly and accurately apply all payments and/or credits to Plaintiff's mortgage loan account;
> (b) provide accurate information … for loss mitigation options and foreclosure as required by 12 CFR § 1024.39 ["Early intervention requirements for certain borrowers"].
> (c) Notice Plaintiffs of acceleration and foreclosure sale prior to proceeding to foreclosure or order of sale or conducted a foreclosure sale prior to providing a specific reason or reasons for denial of all loan workout alternatives" in violation of 12 CFR § 1024.41(g) or (j) ["" Loss mitigation procedures"].

For the above-stated reasons, Plaintiffs are entitled to, and hereby ask for, damages under 12 U.S.C. § 2605(f)(1) (A) and (B), in an amount equal to the sum of:

Page 8

(a) Their actual damages as a result of the Defendants,' CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, violations; and

(b) Any additional damages, as the Court may allow, in the case of a pattern and practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

## C. Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC's Violations of Texas Property Code § 51.002.

7.10   Plaintiffs allege the Mortgage Servicer was required to send a certified-mail notice of default and provide at least 20 days to cure before any notice of sale could be given. *Tex. Prop. Code § 51.002*. The Texas Property Code requires notice of foreclosure to be posted on the property which is listed on the Substitute Trustee's Deed. Texas Property Code 51.002 lists several pre-requisites mortgagees must fulfill before instituting foreclosure proceedings, including notice, of which Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, have failed to fulfill. Plaintiff alleges that Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, did not abide by the rules and requirements of the Plaintiffs' mortgage loan, as required by the express terms of the Deed of Trust and by Chapter 51 of the Texas Property Code.

Section 51.002(d) of Texas Property Code states:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (d) is excluded in computing the 20-day notice period. Sec. 51.002(d), Tex. Prop. Code Ann.

7.11   A mortgage servicer must comply with all provisions of §51.002 of Texas Property Code in order for a valid right to foreclose to arise. The Property Code provides that notice of default has a 20-day notice period required for notice of sale.

Page 9

7.12    Here, Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, failed to notice Plaintiffs of acceleration of the note and foreclosure sale of Plaintiffs' homestead, and as such, Plaintiffs have not been able to reconcile their mortgage balance and account history.  In spite of these errors by the Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, it foreclosed on Plaintiffs' homestead, which circumvents the Texas Property Code and specifically failed compliance with § 51.002 of the Texas Property Code.

### D. Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC's Conduct of Mortgage Fraud.

7.13    Defendant Nationstar Mortgage, LLC administered the foreclosure on behalf of Defendant CrossCountry Mortgage, LLC. Because Nationstar acted as a mortgage servicer for CrossCountry, the foreclosure notices were required to disclose that Nationstar was acting on behalf of CrossCountry under a servicing agreement, identify CrossCountry Mortgage, LLC as the mortgagee, and provide the mortgagee's required address information. *Tex. Prop. Code § 51.0025.* In addition, Defendants were required to strictly comply with the Texas Property Code foreclosure prerequisites applicable to residential property, including providing a certified-mail notice of default and a full 20-day opportunity to cure prior to issuance of a notice of sale. Tex. Prop. Code § 51.002(b); *Collins v. Bayview Loan Servicing, LLC*, 416 S.W.3d 682. Plaintiffs allege that Defendants CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC made material misrepresentations and/or omissions in connection with the servicing of the loan and the foreclosure process. These misrepresentations and omissions include, but are not limited to:

(a) Misrepresentations and/or omissions concerning the existence, content, timing, or delivery of the required default-and-cure notice and the statutory 20-day cure period; and/or

(b) Misrepresentations and/or omissions concerning the identity, authority, and legal capacity of the entity pursuing foreclosure, including failure to properly disclose that Nationstar was acting as servicer for CrossCountry as required by Tex. Prop. Code § 51.0025.

7.14    Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, issued and relied upon defective foreclosure notices in order to proceed with foreclosure. Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, made these representations and omissions with the intent that Plaintiffs accept the authority of the foreclosing party without challenge, refrain from disputing standing or statutory compliance, and allow the foreclosure process to proceed to sale.

7.15    In this case, Plaintiffs allege reliance, or a legally cognizable causal nexus, between Defendant CrossCountry Mortgage, LLC's and Defendant Nationstar Mortgage, LLC's fraud-based conduct and Plaintiffs' resulting damages. Defendant CrossCountry Mortgage, LLC's and Defendant Nationstar Mortgage, LLC's misrepresentations and omissions directly and proximately caused Plaintiffs' damages by tainting the foreclosure process and depriving Plaintiffs of a meaningful opportunity to challenge statutory compliance and the foreclosing party's authority. The defective notices and fraudulent omissions rendered the foreclosure process invalid and void. Defendants made a false representation of a past or existing material fact made to induce Plaintiffs to enter into a contract, and Plaintiffs relied on it in entering the contract; or a false promise to perform an act was made with the intention of not fulfilling it, to induce Plaintiffs to enter into a contract, and Plaintiffs relied on it in entering the contract. *Tex. Bus. & Com. Code § 27.01.* Plaintiffs suffered actual damages due to Defendants false representations or promises. *Tex. Bus. & Com. Code § 27.01.*

**E. *Defendant CrossCountry Mortgage, LLC's and Defendant Nationstar Mortgage, LLC's Breach of Duty of Good Faith and Fair Dealing/Bad Faith/ "Unclean Hands"/Estoppel.***

7.16    Texas Courts have long recognized a cause of action for breach of the duty of good faith and fair dealing between parties in equity as it relates to contracts and agreements. The elements are: (1) the existence of an agreement between the parties, (2) the breach and/or failure of a party

Page 11

to bargain in good faith, and (3) the reliance of the other party to suffer a loss in equity in reliance on the duty of the other party's actions.

7.17    With regard to the relationship between the mortgagor and mortgage servicer, Defendant CrossCountry Mortgage, LLC and Defendant Nationstar Mortgage, LLC, the latter had a common law and/or statutory duty of good faith. Statutorily, its duty of good faith is based on 12 CFR § 1024.39(a), which required that it "establish or make good faith efforts to establish live contact with a delinquent borrower" within the time constraints provided in this provision, requiring that the "servicer shall inform the borrower about the availability of loss mitigation options," including COVID-19 economic hardship related forbearance programs  and contact information for homeownership counseling services" under subsection (e)(1)(i) and (ii) of this regulation.

7.18    As established above, the Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, breached its duty of good faith and/or duty of good faith and fair dealing, proximately resulting in damages to the Plaintiffs. Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC,  conduct rose to the level of constituting bad faith and/or exhibited its actual conscious indifference (i.e., gross negligence) to the rights of the Plaintiffs. It is undisputed that Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, never established or made a good faith effort to make live contact with the Plaintiffs, regarding an alleged delinquency, in which the conduct of the Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, was unconscientious, unjust, marked by a want of good faith or violated the principles of equity and righteous dealing.

7.19    Defendant CrossCountry Mortgage, LLC's and Defendant Nationstar Mortgage, LLC's lack of good faith, bad faith and/or gross negligence conclusively establishes that it had "unclean hands" with regard to the matters at issue.

*F. Defendant CrossCountry Mortgage, LLC's and Defendant Nationstar Mortgage, LLC's Violations of Texas Deception Trade Act (DTPA).*

7.20   Plaintiffs are a consumers under the Texas Deceptive Trade Practices Act ("DTPA"), as Plaintiffs sought to acquire services for personal, family, or household purposes. Plaintiff sought services from Defendants, CrossCountry Mortgage, LLC and Nationstar Mortgage, LLC, in the form of mortgage lending and servicing. Defendants engaged in false, misleading, or deceptive acts or practices in violation of § 17.46(b) of the DTPA.

7.21   Defendants made a false representation of a past or existing material fact  made to induce Plaintiffs to enter into a contract, and Plaintiffs relied on it in entering the contract; or a false promise to perform an act was made with the intention of not fulfilling it, to induce Plaintiffs to enter into a contract, and Plaintiffs relied on it in entering the contract. *Tex. Bus. & Com. Code § 27.01.* Plaintiffs suffered actual damages due to Defendants false representations or promises. *Tex. Bus. & Com. Code § 27.01.*

7.22   Plaintiffs has also incurred out-of-pocket expenses, emotional distress, loss of use of the property, and other consequential damages directly resulting from Defendant's deceptive conduct.

*G. Trespass to Try Title Claims Against Defendant REIARI, LLC.*

7.23   Plaintiffs bring this action in trespass to try title against Defendant REIARI, LLC to determine title to the subject real property. See *Estrada v. Cheshire*, 470 S.W.3d 109. Plaintiffs allege that they hold superior title to the Property and are entitled to judgment adjudicating title in their favor. Specifically, Plaintiffs assert superior title by virtue of wrongful foreclosure on Tuesday, January 6, 2026. To the extent possession is intertwined with title, Plaintiffs request that the Court determine title as a prerequisite to any final adjudication of possession. See Estrada v. Cheshire, 470 S.W.3d 109. Plaintiffs seek judgment for title, possession if appropriate, and all other relief consistent with the Court's title determination.

Page 13

## H. *Quiet Title Against Defendant REIARI, LLC.*

7.24    Plaintiffs have an ownership interest in the Property. Plaintiffs bring this suit to quiet title against Defendant REIARI, LLC to remove clouds on title arising from the wrongful and invalid foreclosure sale. Plaintiffs allege that: (1) Plaintiffs possess a superior ownership interest in the Property; (2) The foreclosure deed and/or related instruments under which REIARI, LLC claims an interest are invalid due to defects in the foreclosure process as previously alleged; and (3) Those instruments constitute a cloud on Plaintiffs' title. Plaintiffs seek a declaration that the foreclosure deed and any derivative instruments are void or voidable and an order quieting title in Plaintiffs.

## VIII. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION RELIEF AGAINST REIARI, LLC

8.1    Defendant REIARI, LLC should not be allowed to sell, transfer or effectuate any other disposition of the property or taking possession or exercising any control and dominion over the property located at **17823 Pumpkin Vine Drive, Hockley, Texas 77447 ("the Property").**

8.2    Defendant REIARI, LLC, is an illegitimate and invalid owner of the Property due to it's acquisition of the Property through a defective and unenforceable foreclosure sale conducted on Tuesday, January 6. 2026.

8.3    Plaintiff will suffer irreparable injury if Defendant REIARI, LLC is not enjoined from effectuating the sale and/or transfer of 17823 Pumpkin Vine Drive, Hockley, Texas 77447.

8.4    There is substantial likelihood that Plaintiffs will succeed on the merits of this action. The threatened harm to Plaintiffs outweighs the harm of a preliminary injunction would inflict on the Defendant REIARI. In addition, the property in question affords Plaintiffs a substantial equity amounts over and above the alleged debt owed to the Defendant.

8.5    Issuance of a preliminary injunction is in the public interest the granting of a preliminary injunction would maintain the status quo and retain one of the most significant assets of the Plaintiffs, to deny the preliminary injunction would be to unjustly enrich the Defendant REIARI and extinguish the Plaintiffs' substantial equity interest in its property.

8.6    Plaintiffs are willing to post a bond in an amount the court deems appropriate.

8.7    Plaintiffs ask the court to set their application for preliminary injunction for a hearing at the earliest possible time, and after hearing the application, issue a preliminary injunction against Defendant.

## IX. MOTION FOR TEMPORARY RESTRAINING ORDER

9.1    All allegations are incorporated herein.

9.2    The Plaintiffs are entitled to Temporary Restraining Order to restrain further transfer, or any other disposition of the property, or taking possession or exercising any control over the property as follows:

> (a) Plaintiffs will incur significant irreparable injury and loss. The threatened damage which would be incurred would be significant and substantial as specified in paragraphs 5.1 thru 8.7 and incorporated herein by reference.
> (b) There is a substantial likelihood of success on the merits as specified in paragraphs 5.1 thru 8.7 and incorporated herein by reference.
> (c) The threatened harm outweighs the harm a temporary restraining order would inflict on the Defendants specified in paragraphs 5.1 thru 8.7, and incorporated herein by reference.
> (d) The Temporary Restraining Order would serve the public interest as specified in paragraph 8.5, incorporated herein by reference.
> (e) Plaintiffs are willing to post a bond in the amount the court deems appropriate.

9.3    For these reasons, Plaintiffs ask the court to issue a temporary restraining order preventing Defendants, its attorneys, agents, successors and/or assigns from consummating, continuing, or effectuating any transaction, transferring and/or selling the real property, located at 17823 Pumpkin Vine Drive, Hockley, Texas 77447; exercising any dominion or control over the Property, or attempting to take possession of the property, and to set the request for a preliminary injunction for hearing at the earliest possible time.

## X. AFFIDAVIT

10.1    An affidavit that proves the allegations in the Application for Injunction Relief and Temporary Restraining Order is attached incorporated by reference.

## XI. ATTORNEYS FEES

11.1    To-wit, Plaintiffs has been required to obtain legal counsel to prosecute this action. The Plaintiffs are therefore, entitled to recover a reasonable amount as attorney's fees for the services rendered and to be rendered by counsel in the trial of this suit. In the event of an appeal, the

Plaintiffs will be entitled to additional reasonable sums as reasonable attorney's fees for services to be rendered or appealed.

## XII. **PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Tonya Rhodes and Jayla Rhodes, respectfully pray that Defendants CrossCountry Mortgage, LLC, Nationstar Mortgage, LLC, and REIARI, LLC be cited to appear and answer herein, and that upon final hearing, Plaintiffs have and recover judgment against Defendants as follows:

(1) Invalidate and rescind the foreclosure sale that occurred on Tuesday, January 6, 2026;

(2) Issue an immediate temporary restraining order to restrain and prevent Defendants, its attorneys, agents, successors and/or assigns from consummating, continuing, or effectuating any transaction, transferring the property, located at 17823 Pumpkin Vine Drive, Hockley, Texas 77447 perfecting its lien or security interest in the property; exercising any dominion or control over the property, or attempting to take possession of the property, or interfering with the Plaintiffs' use and possession of the property or trespassing on the property, and to set the request for a preliminary injunction for hearing at the earliest possible time.

(3) Following hearing and notice to Defendants, issue a temporary injunction to prevent Defendants and its agents and employees from proceeding with the foreclosure sale of Plaintiffs' property during the pendency of this cause of action in order to maintain the status quo herein;

(4) Actual Damages;

(5) Exemplary Damages;

(6) Damages under RESPA;

(7) Consequential Damages;

(8) Attorneys Fees and Costs;

(9) Economic Damages;

(10) Emotional Distress Damages

(11) Order the Defendants to be cited to appear and answer herein and that upon final hearing, this Court grant declaratory judgment that no foreclosure sale of Plaintiffs' property be validated during the pendency of this cause and enter a permanent injunction to prevent Defendant, its employees or agents from foreclosure validation on the property, and evicting Plaintiffs from their property;

(12) That Plaintiffs be granted cost of court and such other and further relief to which they may be justly entitled.

Respectfully submitted,

Page 17

Jarrett Law Firm, PLLC

**/s/ LaToya Jarrett**
LaToya Jarrett
State Bar No. 24073021
3033 Chimney Rock Rd, Suite 610
Houston, Texas 77056
Tel.: (832) 831-0833
Fax: (281) 783-2644
ljarrett@jarrettlawfirm.com
*Attorney for Plaintiffs, Tonya Rhodes
and Jayla Rhodes*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

LaToya Jarrett on behalf of LaToya Jarrett
Bar No. 24073021
attorney@facingforeclosuretexas.com
Envelope ID: 111562428
Filing Code Description: Petition
Filing Description: PLAINTIFFS ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUCTION RELIEF
Status as of 2/23/2026 9:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| LaToya PJarrett | | ljarrett@jarrettlawfirm.com | 2/22/2026 6:35:14 PM | NOT SENT |
| LaToya PJarrett | | ljarrett@jarrettlawfirm.com | 2/22/2026 6:35:14 PM | NOT SENT |

2/22/2026 6:35:14 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 111562428
By: STIRRUP, JAROD D
Filed: 2/23/2026 12:00:00 AM

## 2026-11852 / Court: 133

### AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

STATE OF TEXAS §
COUNTY OF HARRIS §

BEFORE ME, the undersigned authority, on this day personally appeared TONYA RHODES, who by me first being duly sworn, upon her oath deposed and stated as follows:

"My name is TONYA RHODES, I am more than eighteen (18) years old I am fully competent to make this Affidavit and to testify in any court of law. All of the statements contained herein and in Plaintiff's Original Petition and Application for Temporary Restraining Order and Injunctive Relief are within my Personal knowledge and are true and correct."

_Tonya Rhodes_
**TONYA RHODES**

SUBSCRIBED and SWORN to before me on this 20ᵗʰ day of February, 2026, to which witness my hand and seal of office.

DANA MARIZ BOFIL
Notary Public, State of Texas
Comm. Expires 03-03-2029
Notary ID 135504889

**NOTARY PUBLIC, STATE OF TEXAS**

2026-11852 / Court: 133

# EXHIBIT A

# EXHIBIT A

When recorded, mail to:
First American Mortgage Solutions
Mail Stop: 142-C
C/O CrossCountry Mortgage, LLC
1795 International Way
Idaho Falls, ID 83402

This document was prepared by:
Gregory S. Graham
Black, Mann & Graham, L.L.P.
17744 Preston Road Ste 200
Dallas, TX 75252

Escrow No.: 1038022300150
LOAN #: 33372307694732

──────────── [Space Above This Line For Recording Data] ────────────

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## DEED OF TRUST

| FHA Case No. |
|---|
| 512-5261562-703 |

MIN: 1007191-0002272843-8
MERS PHONE #: 1-888-679-6377

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
(A) "Security Instrument" means this document, which is dated   October 30, 2023,           together with all Riders to this document.
(B) "Borrower" is   TONYA RHODES, A SINGLE WOMAN, AND JAYLA RHODES, A SINGLE WOMAN.

Borrower is the grantor under this Security Instrument.
(C) "Lender" is   CrossCountry Mortgage, LLC.

Lender is   a Limited Liability Company,                                                 organized and existing
under the laws of   Delaware.
Lender's address is   2160 Superior Avenue, Cleveland, OH 44114

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is   Gregory S. Graham.

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                          Page 1 of 10                          TXEFHA15DE   0118
                                                                                              TXEDEED (CLS)
                                                                                        10/26/2023 11:39 AM PST



LOAN #: 33372307694732

Trustee's address is   17744 Preston Road Ste 200, Dallas, TX 75252.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   October 30, 2023.        The Note states that Borrower owes Lender   ONE HUNDRED SIXTY ONE THOUSAND TWO HUNDRED SEVENTY THREE AND NO/100************************************************* Dollars (U.S.   $161,273.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2053.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Planned Unit Development Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   County
[Type of Recording Jurisdiction]

of  Harris
[Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: 145-350-006-0017

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                                    Page 2 of 10                              TXEFHA15DE   0118
                                                                                                           TXEDEED (CLS)
                                                                                                  10/26/2023 11:39 AM PST



LOAN #: 33372307694732

which currently has the address of    17823 Pumpkin Vine Dr, Hockley,

[Street] [City]

Texas  77447                          ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:
First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and,
Fifth, to late charges due under the Note.
Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.



LOAN #: 33372307694732

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.

TXEFHA15DE   0118
TXEDEED (CLS)
10/26/2023 11:39 AM PST

LOAN #: 33372307694732

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing

LOAN #: 33372307694732

Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all



LOAN #: 33372307694732

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

22. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

LOAN #: 33372307694732

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

23. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 24, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 24, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

25. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

26. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

27. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                                    Page 8 of 10                                    TXEFHA15DE  0115
TXEDEED (CLS)
10/26/2023 11:39 AM PST



LOAN #: 33372307694732

and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

28. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

29. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

☒ Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Tonya Rhodes_        10/30/2023 (Seal)
TONYA RHODES                      DATE

_Jayla Rhodes_        10/30/2023 (Seal)
JAYLA RHODES                      DATE

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                     Page 9 of 10                     TXEFHA15DE  0116
TXEDEED (CLS)
10/26/2023 11:39 AM PST



LOAN #: 33372307694732

State of TEXAS                                                                              County of HARRIS

This instrument was acknowledged before me on this 30 day of October 2023 (date) by
TONYA RHODES AND JAYLA RHODES.

_____
Notary Public's Signature

(Personalized Seal)

VALERIE GALVAN
ID# 11947245
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MAY 5, 2024

Lender: CrossCountry Mortgage, LLC
NMLS ID: 3029
Loan Originator: Alyson Griffin
NMLS ID: 208938

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044    1/01 (rev. 10/17)
Modified for FHA 9/2014 (HUD Handbook 4000.1)
ICE Mortgage Technology, Inc.                          Page 10 of 10                          TXEFHA15DE  0118
                                                                                              TXEDEED (CLS)
                                                                                       10/26/2023 11:39 AM PST



**LOAN #: 33372307694732**
**MIN: 1007191-0002272843-8**

FHA Case No.
512-5261662-703

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 30th        day of
October, 2023,        and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
CrossCountry Mortgage, LLC, a Limited Liability Company

("Lender") of the same date and covering the Property described in the Security Instru-
ment and located at:
17823 Pumpkin Vine Dr
Hockley, TX 77447.

The Property Address is a part of a planned unit development ("PUD") known as
Windrow Section 5

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common
areas and facilities), acting as trustee for the homeowners, maintains, with a gener-
ally accepted insurance carrier, a "master" or "blanket" policy insuring the property
located in the PUD, including all improvements now existing or hereafter erected
on the mortgaged premises, and such policy is satisfactory to Lender and provides
insurance coverage in the amounts, for the periods, and against the hazards Lender
requires, including fire and other hazards included within the term "extended cover-
age," and loss by flood, to the extent required by the Secretary, then:
   (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the
     monthly payment to Lender of one-twelfth of the yearly premium installments
     for hazard insurance on the Property, and
   (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain
     hazard insurance coverage on the Property is deemed satisfied to the extent
     that the required coverage is provided by the Owners Association policy.
Borrower shall give Lender prompt notice of any lapse in required hazard insurance
coverage and of any loss occurring from a hazard. In the event of a distribution of
hazard insurance proceeds in lieu of restoration or repair following a loss to the
Property or to common areas and facilities of the PUD, any proceeds payable to
Borrower are hereby assigned and shall be paid to Lender for application to the
sums secured by this Security Instrument, with any excess paid to the entity legally
entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal
instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may
pay them. Any amounts disbursed by Lender under this paragraph C shall become
additional debt of Borrower secured by the Security Instrument. Unless Borrower
and Lender agree to other terms of payment, these amounts shall bear interest from
the date of disbursement at the Note rate and shall be payable, with interest, upon
notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 9/2014
ICE Mortgage Technology, Inc.        Page 1 of 2        FHA15PUDRD 0815
P8700PUU (CLS)
10/26/2023 11:39 AM PST



LOAN #: 33372307694732

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Tonya Rhodes_      10/30/2023 (Seal)
**TONYA RHODES**                     DATE

_Jayla Rhodes_      10/30/2023 (Seal)
**JAYLA RHODES**                     DATE

FHA Multistate PUD Rider - 9/2014
ICE Mortgage Technology, Inc.

Page 2 of 2

FHA15PUDRD 0815
P8700PUU (CLS)
10/26/2023 11:39 AM PST



2026-11852 / Court: 133

# EXHIBIT B

# EXHIBIT B

LOAN #: 33372307694732
MIN: 1007191-0002272843-8

## NOTE

FHA Case No.
512-5261562-703

October 30, 2023
[Date]

Cleveland,
[City]

Ohio
[State]

17823 Pumpkin Vine Dr, Hockley, TX 77447
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $161,273.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CrossCountry Mortgage, LLC, a Limited Liability Company.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.688 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st      day of each month beginning on December 1, 2023. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on November 1, 2053,      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2160 Superior Avenue
Cleveland, OH 44114
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,148.48.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
ICE Mortgage Technology, Inc.

FHA3200NOT  0216
FHA3200NOT (CLS)
10/26/2023 11:39 AM PST



LOAN #: 33372307694732

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Jonya Rhodes_ _____ (Seal)
TONYA RHODES

_Jayla Rhodes_ _____ (Seal)
JAYLA RHODES

Lender: CrossCountry Mortgage, LLC
NMLS ID: 3029
Loan Originator: Alyson Griffin
NMLS ID: 206938

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
ICE Mortgage Technology, Inc.    Page 2 of 2    FHA3200NOT  0216
FHA3200NOT (CLS)
10/26/2023 11:39 AM PST



2026-11852 / Court: 133

# EXHIBIT C

# EXHIBIT C



## YOUR CREDIT UNION

Your wire request for $5,506.36 will be debited from account ending in ▆▆▆
In addition, a $20.00 wire fee has been assessed.

---

### *** WIRE DETAILS ***

---

**Wire Sequence**
▆▆▆

**Business Code / Wire Type**
CTR-Customer Transfer
1000-Basic Funds Transfer

**Originator Information**
Originator
TONYA RHODES

17823 PUMPKIN VINE DR
HOCKLEY TX 77447
United States

**Originator To Beneficiary**
TONYA RHODES
17823 PUMPKIN VINE DR
HOCKLEY, TX 77447
TEL: (832) 603-0060

**Entered Date**
04/04/2025 04:42 PM Central Time
**Effective Date**
04/04/2025
**Receiving Financial Institution**
▆▆▆

**Beneficiary Information**
Beneficiary
Cross Country Mortgage
D  46290008007677
P.O.BOX 650783
DALLAS, TX 75265-0783
United States

**Beneficiary Reference**
▆▆▆

SIGNATURE ___*Tonya Rhodes*___
DATE 04/04/2025

The member originator requests payment to be made to the beneficiary or account number named above. To the extent not prohibited by law, the undersigned agrees that this wire transfer is irrevocable and that the sole obligation of the institution named above is to exercise ordinary care in processing this wire transfer and that it is not responsible for any losses or delays which occur as a result of any other party's involvement in processing this transfer.

The notice below does not intend to provide legal or professional advice. Please consult with a lawyer if you have any questions.

IMPORTANT NOTICE: If you receive an email with wiring instructions for your mortgage closing, inquire before you wire! ALWAYS confirm the email is from your real estate professional or Title Company and verify the wiring instructions. NEVER wire money without first confirming that the wiring instructions are legitimate. If you receive any last minute changes through your email regarding instructions for your mortgage closing, please contact your real estate professional or Title Company immediately to confirm these changes.

8:30



Transfer Funds   View Statement   Unhide Account Number

Transactions   Details & Settings

Q   Nsm   ✕



JAN 16 2024
External Withdrawal NSM
DBAMR.COOPER ▮▮▮▮   ($323.26)

Details

Statement Description:
External Withdrawal NSM DBAMR.COOPER ▮▮▮▮
▮▮▮ NSM DBAMR
Date:
1/16/2024
Type:
Debit

**Page totals:** Credits: [0] **$0.00** Debits: [1] **($323.26)**



HOME   TRANSFER & PAY   DEPOSIT CHECK   CHAT   MENU



8:28

Transfer Funds    View Statement    Unhide Account Number

Transactions    Details & Settings

🔍    ▽    $⇄    ⋮

🔍    <u>Crosscountry</u>    ✕

**SEP 23 2024**
External Withdrawal
CROSSCOUNTRY ███████        ($4,069.00)    ⋮

**JUN 20 2024**
External Withdrawal
CROSSCOUNTRY ███████        ($851.00)    ⋮

**MAY 13 2024**
External Withdrawal
CROSSCOUNTRY ███████        ($851.00)    ⋮

**APR 5 2024**
External Withdrawal
CROSSCOUNTRY ███████        ($851.00)    ⋮

**MAR 12 2024**
Point Of Sale Withdrawal
CROSSCOUNTRY MORTGAGE ██        ($2,026.00)    ⋮

**Page totals:** Credits: [0] **$0.00** Debits: [5] **($8,648.00)**

🏠 HOME    $⇄ TRANSFER & PAY    📷 DEPOSIT CHECK    💬 CHAT    ☰ MENU

2026-11852 / Court: 133

# EXHIBIT D

# Payment History List

## EXHIBIT D

**January 6, 2026**

| Check Date | Check # | Payee Account # | Payee | Tenant | Agcy | Prgm | Type | VMS Date | Amount | Voided | Cleared |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2023 | 1003259 | ***-**-7297 | Olalekan D | Rhodes, Tonya | 9 | 10 | HAP | 07/01/2023 | $250.00 | ☐ | ☐ |
| 08/01/2023 | 1003285 | ***-**-7297 | Olalekan D | Rhodes, Tonya | 9 | 10 | HAP | 08/01/2023 | $250.00 | ☐ | ☐ |
| 09/01/2023 | 1003312 | ***-**-7297 | Olalekan D | Rhodes, Tonya | 9 | 10 | HAP | 09/01/2023 | $899.00 | ☐ | ☐ |
| 10/01/2023 | 1003339 | ***-**-7297 | Olalekan D | Rhodes, Tonya | 9 | 10 | HAP | 10/01/2023 | $899.00 | ☐ | ☐ |
| 11/01/2023 | 1003366 | ***-**-7297 | Olalekan D | Rhodes, Tonya | 9 | 10 | HAP | 11/01/2023 | $1059.00 | ☐ | ☐ |
| 12/01/2023 | 1003389 | **-***5132 | Dovenmuehle | Rhodes, Tonya | 9 | 10 | HAP | 12/01/2023 | $1237.00 | ☐ | ☐ |
| 01/01/2024 | 1003417 | **-***5132 | Dovenmuehle | Rhodes, Tonya | 9 | 10 | HAP | 01/01/2024 | $1237.00 | ☐ | ☐ |
| 02/01/2024 | 1003444 | **-***5132 | Dovenmuehle | Rhodes, Tonya | 9 | 10 | HAP | 02/01/2024 | $386.00 | ☐ | ☐ |
| 03/01/2024 | 44612 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 03/01/2024 | $710.00 | ☐ | ☐ |
| 04/01/2024 | 44710 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 04/01/2024 | $710.00 | ☐ | ☐ |
| 05/01/2024 | 44816 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 05/01/2024 | $710.00 | ☐ | ☐ |
| 06/01/2024 | 44923 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 06/01/2024 | $710.00 | ☐ | ☐ |
| 07/01/2024 | 45044 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 07/01/2024 | $710.00 | ☐ | ☐ |
| 08/01/2024 | 45180 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 08/01/2024 | $710.00 | ☐ | ☐ |
| 09/01/2024 | 45283 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 09/01/2024 | $710.00 | ☐ | ☐ |
| 10/01/2024 | 45390 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 10/01/2024 | $710.00 | ☐ | ☐ |
| 10/01/2024 | 45391 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 08/01/2024 | $710.00 | ☐ | ☐ |
| 09/30/2024 | 45180 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 08/01/2024 | -$710.00 | ☐ | ☐ |
| 11/01/2024 | 45490 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 11/01/2024 | $710.00 | ☐ | ☐ |
| 12/01/2024 | 45606 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 12/01/2024 | $958.00 | ☐ | ☐ |
| 01/01/2025 | 1003771 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 01/01/2025 | $958.00 | ☐ | ☐ |
| 02/01/2025 | 1003804 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 02/01/2025 | $958.00 | ☐ | ☐ |
| 03/01/2025 | 1003835 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 03/01/2025 | $958.00 | ☐ | ☐ |
| 03/01/2025 | 1003835 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 12/01/2024 | $958.00 | ☐ | ☐ |
| 02/28/2025 | 45606 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 12/01/2024 | -$958.00 | ☐ | ☐ |
| 04/01/2025 | 1003866 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 04/01/2025 | $958.00 | ☐ | ☐ |
| 05/01/2025 | 1003897 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 05/01/2025 | $958.00 | ☐ | ☐ |
| 06/01/2025 | 1003929 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 06/01/2025 | $958.00 | ☐ | ☐ |
| 07/01/2025 | 1003960 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 07/01/2025 | $958.00 | ☐ | ☐ |
| 08/01/2025 | 1003992 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 08/01/2025 | $958.00 | ☐ | ☐ |
| 09/01/2025 | 1004024 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 09/01/2025 | $958.00 | ☐ | ☐ |
| 10/01/2025 | 1004056 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 10/01/2025 | $958.00 | ☐ | ☐ |
| 11/01/2025 | 1004088 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 11/01/2025 | $958.00 | ☐ | ☐ |
| 12/01/2025 | 1004122 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 12/01/2025 | $504.00 | ☐ | ☐ |
| 01/01/2026 | 1004155 | **-***6869 | Nationstar | Rhodes, Tonya | 9 | 10 | HAP | 01/01/2026 | $504.00 | ☐ | ☐ |

**$49684.00**

2026-11852 / Court: 133

# EXHIBIT E

# EXHIBIT E

RP-2026-15527
01/14/2026  ER  $33.00

| | |
|---|---|
| Current Borrower: | TONYA RHODES, A SINGLE WOMAN, AND JAYLA RHODES, A SINGLE WOMAN |
| MH File Number: | TX-25-123664-POS |
| Deed of Trust Address: | 17823 PUMPKIN VINE DR, HOCKLEY, TX 77447 |

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## SUBSTITUTE TRUSTEE'S DEED

**Deed of Trust Date:**
10/30/2023
**Original Grantor(s)/Mortgagor(s):**
TONYA RHODES, A SINGLE WOMAN, AND JAYLA RHODES, A SINGLE WOMAN
**Original Beneficiary/Mortgagee:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS A NOMINEE FOR CROSSCOUNTRY MORTGAGE, LLC., ITS SUCCESSORS AND ASSIGNS
**Current Beneficiary/Mortgagee:**
CrossCountry Mortgage, LLC
**Property County:**
HARRIS

**Foreclosure Sale Date:**
1/6/2026
**Foreclosure Sale Time:**
10:54 A.M.

**Sale Amount:**
$182,851.00

**Grantee/Buyer:**
REIARI LLC
**Grantee/Buyer Address:**
17424 W. GRAND PKWY #163
SUGARLAND, TX 77479

**Recorded in:**
**Volume:** N/A
**Page:** N/A
**Instrument No:** RP-2023-416234

**Legal Description of Property:** LOT 17, BLOCK 6, OF WINDROW SEC 5, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN FILM CODE 697581, MAP RECORDS, HARRIS COUNTY, TEXAS

Grantor conveyed the Property to Trustee in trust to secure payment of the Note. Beneficiary declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Beneficiary of the Note, accordingly, has appointed Substitute Trustee, as authorized under the Deed of Trust, and has requested Substitute Trustee to enforce the trust.

Notices stating the time, place, and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for the amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 10am as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3) hours thereafter. All matters, duties and obligations of Beneficiary were lawfully performed as evidenced by the affidavit(s) attached hereto and made a part hereof for all purposes.

Substitute Trustee, by the authority conferred by Current Beneficiary and by the Deed of Trust, subject to prior liens and other exceptions in the Deed of Trust, if any, and for the amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee binds Grantor and Grantor's heirs, executors, administrators, successors or assigns, to Buyer's heirs, executors, administrators, successors or assigns against every person lawfully claiming to warrant and defend all right, title and interest in the property or any part thereof. Substitute Trustee sold the Property described above on an "AS IS" and "WHERE IS" basis without any express or implied warranties, except as to warranties of title, and at Purchaser's own risk, pursuant to the terms of TEX. PROP. CODE §51.002 and §51.009.

WITNESS MY HAND, this ___9th___ day of ___January___, ___2026___

Jeff Leva, Sandy Dasigenis, Patricia Poston, Megan L. Randle, Ebbie Murphy, Wayne Daughtrey, Steve Leva, David Poston, Nick Poston, Chris Poston, Amar Sood, Jeff Leva or Steve Leva

STATE OF TEXAS          §
COUNTY OF HARRIS        §

Before me, the undersigned Notary Public, on this day personally appeared Jeff Leva Sandy Dasigenis, Patricia Poston, Megan L. Randle, Ebbie Murphy, Wayne Daughtrey, Steve Leva, David Poston, Nick Poston, Chris Poston, Amar Sood, Jeff Leva or Steve Leva as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____N/A_____, to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 9th day of    January    .    2026    .

Current Borrower: **TONYA RHODES, A SINGLE WOMAN, AND JAYLA RHODES, A SINGLE WOMAN**
MH File Number: **TX-25-123664-POS**
Deed of Trust Address: **17823 PUMPKIN VINE DR, HOCKLEY, TX 77447**

## AFFIDAVIT

STATE OF TEXAS    §
COUNTY OF COLLIN   §

BEFORE ME, the undersigned authority on this day personally appeared Affiant, who after being duly sworn, deposed as follows:

"1. I am a duly authorized agent of McCarthy & Holthus, LLP, attorney for Nationstar Mortgage LLC (mortgage servicer and duly authorized agent of the Current Beneficiary and Mortgagee as referenced in the foregoing Substitute Trustee's Deed) at the time of the events hereinafter set forth and make this affidavit to the best of my knowledge and belief for the purpose of declaring the incidents of statutory and contractual compliance of the entity or entities set out below.

2. This affidavit is made with respect to the foreclosure of that certain Deed of Trust dated 10/30/2023, recorded in Volume: N/A Page: N/A Instrument No: RP-2023-416234     of the Real Property Records, HARRIS County, Texas, executed by TONYA RHODES, A SINGLE WOMAN, AND JAYLA RHODES, A SINGLE WOMAN, borrower(s), to GREGORY S. GRAHAM, Trustee, to secure payment of a Note to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS A NOMINEE FOR CROSSCOUNTRY MORTGAGE, LLC., ITS SUCCESSORS AND ASSIGNS.

3. To the best of my knowledge and belief, proper notice was sent prior to acceleration of indebtedness. All obligations duties of the holder of the debt were performed in the manner required by law and all notices were served on the Debtor at the Debtor's last known address as shown by the records of the holder of the debt.

4. To the best of my knowledge and belief, the mortgagors holding an interest in the above described property 1) were not members of the Armed Forces of the United States of America or were not protected by the Servicemembers' Civil Relief Act or Tex. Prop. Code § 51.015 on the date of the Trustee's Sale, and 2) were alive at the time of the foreclosure sale or, if deceased, the subject Trustee's Sale is not void or voidable pursuant to Tex. Estates Code § 256.003.

5. At the instruction and on behalf of the note holder or its agent, notice of acceleration of indebtedness and Notice of Trustee's Sale was served on every Debtor obligated on the debt, in strict compliance with the Texas Property Code, by certified mail at least twenty-one (21) days prior to the date therein specified for sale at the last known address of each such Debtor according to the records of the mortgage servicer.

6. At the instructions and on behalf of the holder of the debt or its agent, the attached Notice of Trustee's Sale was filed with the County Clerk in the county or counties in which the subject property is situated and copies thereof posted at said courthouse(s) as required by law and in the manner specified by ordinance or custom."

FURTHER AFFIANT SAYETH NAUGHT.

Executed on: 1/13/2026

By: Debra Durdorff
AFFIANT
Authorized Agent of McCarthy & Holthus, LLP

STATE OF TEXAS    §
COUNTY OF COLLIN  §

Sworn to and subscribed before me, the undersigned Notary Public, on this day personally appeared Debra Durdorff                    , who is a duly authorized agent of McCarthy & Holthus, LLP, on behalf of said law firm, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office dated this 13th day of January, 2026.

Notary Public Signature

ELIZABETH S. JOHNSON
Notary Public, State of Texas
Comm. Expires 04-04-2028
Notary ID 128471664

UNOFFICIAL COPY



## NOTICE OF SUBSTITUTE TRUSTEE SALE

| Deed of Trust Date:<br>10/30/2023 | Grantor(s)/Mortgagor(s):<br>TONYA RHODES, A SINGLE WOMAN, AND JAYLA RHODES, A SINGLE WOMAN |
|---|---|
| Original Beneficiary/Mortgagee:<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") SOLELY AS A NOMINEE FOR CROSSCOUNTRY MORTGAGE, LLC., ITS SUCCESSORS AND ASSIGNS | Current Beneficiary/Mortgagee:<br>CrossCountry Mortgage, LLC |
| Recorded in:<br>Volume: N/A<br>Page: N/A<br>Instrument No: RP-2023-416234 | Property County:<br>HARRIS |
| Mortgage Servicer:<br>Nationstar Mortgage LLC is representing the Current Beneficiary/Mortgagee under a servicing agreement with the Current Beneficiary/Mortgagee. | Mortgage Servicer's Address:<br>8950 Cypress Waters Blvd.,<br>Coppell, TX 75019 |
| Date of Sale: 1/6/2026 | Earliest Time Sale Will Begin: 10am |

Place of Sale of Property: Magnolia South Ballroom inside the Bayou City Event Center or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioners Court OR IN THE AREA DESIGNATED BY THE COMMISSIONER'S COURT, PURSUANT TO SECTION 51.002 OF THE TEXAS PROPERTY CODE.

Legal Description: LOT 17, BLOCK 6, OF WINDROW SEC 5, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN FILM CODE 697581, MAP RECORDS, HARRIS COUNTY, TEXAS

In accordance with TEX. PROP. CODE §51.0076 and the Deed of Trust referenced above, the undersigned as attorney for Mortgagee or Mortgage Servicer does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead, Jeff Leva, Sandy Dasigenis, Patricia Poston, Megan L. Randle, Ebbie Murphy, Wayne Daughtrey, Steve Leva, David Poston, Nick Poston, Chris Poston, Auction Bidd, Jeff Leva or Steve Leva, Cole Patton, Myra Homayoun, Thuy Frazier, McCarthy & Holthus, LLP, as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the beneficiary therein

The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

The Property will be sold "AS IS," without any express or implied warranties, except as to warranties of title, and at the purchaser's own risk, pursuant to the terms of TEX. PROP. CODE §51.002 and §51.009. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the Property.

Substitute Trustee reserves the right to set further reasonable conditions for conducting the public auction. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by Substitute Trustee.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

NOTICE PURSUANT TO TEX. PROP. CODE §51.002(i): ASSERT AND PROTECT YOUR RIGHTS AS MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU OR YOUR SPOUSE ARE SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

Dated: 10/21/2025



Thuy Frazier, Attorney
McCarthy & Holthus, LLP
1255 West 15th Street, Suite 1060
Plano, TX 75075
Attorneys for Nationstar Mortgage LLC

Dated: 10/23/25

SANDY DASIGENIS
Printed Name:



Substitute Trustee
c/o ServiceLink Auction
1255 West 15th Street, Suite 1060
Plano, TX 75075
http://sales.mccarthyholthus.com/

MH File Number: TX-25-123664-POS
Loan Type: FHA

FILED 10/23/2025 9:09:08 AM FRCL-2025-7795 TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

RP-2026-15527
# Pages 4
01/14/2026 02:29 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees $38.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

2/22/2026 6:35:14 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 111562428
By: STIRRUP, JAROD D
Filed: 2/23/2026 12:00:00 AM

## 2026-11852 / Court: 133

CAUSE NO. _____

| | | |
|---|---|---|
| TONYA RHODES, JAYLA RHODES | § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | _____ JUDICIAL DISTRICT |
| | § | |
| CROSSCOUNTRY MORTGAGE, LLC, | § | |
| NATIONSTAR MORTGAGE LLC, AND | § | |
| REIARI LLC | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

### PROPOSED ORDER FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT REIARI, LLC

Came on to be heard Plaintiffs' Application for Temporary Restraining Order and Application for Temporary Injunction. After considering Plaintiffs, Tonya Rhodes and Jayla Rhodes (collectively referred to as "Plaintiffs"), Application for Temporary Restraining Order, the pleadings, all affidavits, and arguments of Counsel, the Court finds there is evidence that harm is imminent to Plaintiffs. If the Court does not grant the relief, Plaintiffs will be irreparably injured because Defendant will likely sell or otherwise interfere with Plaintiff's ownership interest in the real property described below:

**Lot 17, Block 6, of WINDROW SEC 5, a subdivision in Harris County, Texas, according to the map or plat thereof as recorded in Film Code 697581, Map Records, Harris County, Texas.**

Also commonly known as: **17823 Pumpkin Vine Drive, Hockley, Texas 77447** (the "Property")

An exparte order without notice to Defendant REIARI, LLC, was necessary because there was not enough time to give notice to Defendant, hold a hearing, and issue a restraining order before the irreparable injury, loss or damage occurred because a sale is imminent.

Unofficial Copy Office of Marilyn Burgess District Clerk

1

**THEREFORE, BY THIS ORDER, THE COURT DOES THE FOLLOWING:**

1. Restrains and enjoins Defendant REIARI, LLC ("*REIARI*" or "*Defendant*"), and its agents, assigns, employees, representatives, and/or Constable's office from proceeding with the sale and/or finalization of a sale of Plaintiffs' property located at 17823 Pumpkin Vine Drive, Hockley, Texas 77447, and from exercising dominion and/or control over the Property.

2. Orders the clerk to issue notice to Defendant REIARI, LLC that the hearing on Plaintiffs' Application for Temporary Injunction is set for _____, 2026, at _____ a.m./p.m. The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

3. Sets bond at _____.

This Order expires on _____, 2026.

SIGNED on _____, 2026.

_____
**PRESIDING JUDGE**

Unofficial Copy Office of Marilyn Burgess District Clerk

2

CAUSE NUMBER 2026-11852

Tonya Rhodes, Jayla Rhodes
PETITIONER                                    §    IN THE DISTRICT COURT OF

Crosscountry mortgage, LLC    §    HARRIS COUNTY, TEXAS
nationstar mortgage, LLC, and    §    133rd    JUDICIAL DISTRICT
RESPONDENT
Relan; LLC

## CLERK'S CERTIFICATE OF CASH DEPOSIT IN LIEU OF INJUNCTION BOND PER ORDER OF THE COURT

**THE STATE OF TEXAS §**
**COUNTY OF HARRIS   §**

THIS DOCUMENT IS TO CERTIFY that I, the undersigned Clerk of the District Courts of Harris County, Texas have received a cash deposit, as ordered by the Court, in the amount of One hundred Dollars ($ 100.00 ). to be deposited with the Registry of the Court in lieu of a Temporary Restraining Order Bond or a Temporary Injunction Bond, as required by Rule 684, T.R.C.P, in the above styled and numbered cause as provided by the order entered on the 24 day of Feb. 20 26

This cash deposit is made and received in lieu of TEMPORARY RESTRAINING ORDER or a TEMPORARY INJUCTION, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part, and this certificate is issued to have the force and effect of a TEMPORARY RESTRAINING ORDER BOND or a TEMPORARY INJUCTION BOND in accordance with the Order of the Court.

WITNESS my hand and seal of office this 24th day of February A.D., 20 26 .

02-24-26
FILED
Marilyn Burgess
District Clerk
FEB 24 2026
Time:_____
Harris County, Texas
By_____

Marilyn Burgess, District Clerk
Harris County, Texas
PO BOX 4651
Houston, Texas 77210-4651

By:_____
Deputy District Clerk

Principal: _____

Attorney: LaToya Jarrett
Bar Number: _____

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

2/22/2026 6:35:14 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 111562428
By: STIRRUP, JAROD D
Filed: 2/23/2026 12:00:00 AM

**2026-11852 / Court: 133**

Pgs-2

TRORX
STBNX
CASO

CAUSE NO. _____

| | | |
|---|---|---|
| TONYA RHODES, JAYLA RHODES | § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| CROSSCOUNTRY MORTGAGE, LLC, | § | |
| NATIONSTAR MORTGAGE LLC, AND | § | |
| REIARI LLC | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## PROPOSED ORDER FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT REIARI, LLC

Came on to be heard Plaintiffs' Application for Temporary Restraining Order and Application for Temporary Injunction. After considering Plaintiffs, Tonya Rhodes and Jayla Rhodes (collectively referred to as "Plaintiffs"), Application for Temporary Restraining Order, the pleadings, all affidavits, and arguments of Counsel, the Court finds there is evidence that harm is imminent to Plaintiffs. If the Court does not grant the relief, Plaintiffs will be irreparably injured because Defendant will likely sell or otherwise interfere with Plaintiff's ownership interest in the real property described below:

**Lot 17, Block 6, of WINDROW SEC 5, a subdivision in Harris County, Texas, according to the map or plat thereof as recorded in Film Code 697581, Map Records, Harris County, Texas.**

Also commonly known as: **17823 Pumpkin Vine Drive, Hockley, Texas 77447** (the "Property")

An exparte order without notice to Defendant REIARI, LLC, was necessary because there was not enough time to give notice to Defendant, hold a hearing, and issue a restraining order before the irreparable injury, loss or damage occurred because a sale is imminent.

1

Unofficial Copy Office of Marilyn Burgess District Clerk

**THEREFORE, BY THIS ORDER, THE COURT DOES THE FOLLOWING:**

1. Restrains and enjoins Defendant REIARI, LLC ("*REIARI*" or "*Defendant*"), and its agents, assigns, employees, representatives, and/or Constable's office from proceeding with the sale and/or finalization of a sale of Plaintiffs' property located at 17823 Pumpkin Vine Drive, Hockley, Texas 77447, and from exercising dominion and/or control over the Property.

2. Orders the clerk to issue notice to Defendant REIARI, LLC that the hearing on Plaintiffs' Application for Temporary Injunction is set for _____March 09_____, 2026, at ___3:00___ a.m./p.m. The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

3. Sets bond at ___100.00_____.

This Order expires on _____March 10_____, 2026.

SIGNED on _____, 2026.

Signed:
2/24/2026     *Erica R. Hughes*
_____
**PRESIDING JUDGE**

2

2/27/2026 8:42 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 111841116
By: Joanna Hernandez
Filed: 2/27/2026 8:42 PM

Receipt Number: 1101533
Tracking Number: 74614538

COPY OF PLEADING PROVIDED BY PLT

CAUSE NUMBER: 202611852

| | |
|---|---|
| PLAINTIFF: RHODES, TONYA P | In the 133rd Judicial |
| vs. | District Court of |
| DEFENDANT: CROSSCOUNTRY MORTGAGE LLC | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: NATIONSTAR MORTGAGE LLC MAY BE SERVED WITH PROCESS BY ITS REGISTERED AGENT CORPORATION SERVICE COMPANY

211 E 7TH STREET SUITE 620

AUSTIN TX 78701-3218

     Attached is a copy of PLAINTIFF'S ORIGINAL PETITION.
This instrument was filed on February 23, 2026, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

     ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this February 23, 2026.



Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: JAROD STIRRUP

Issued at request of:
JARRETT, LATOYA P
3033 CHIMNEY ROCK RD SUITE 610
HOUSTON, TX 77056
832-831-0833
Bar Number: 24073021



AFFIDAVIT ATTACHED

CAUSE NO. 202611852

| | | |
|---|---|---|
| TONYA RHODES, JAYLA RHODES | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | 133RD JUDICIAL DISTRICT |
| VS. | § | |
| | § | |
| CROSSCOUNTRY MORTGAGE LLC, NATIONSTAR | § | |
| MORTGAGE LLC AND REIARI LLC | | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE

"The following came to hand on **Feb 24, 2026, 2:50 pm,**

CITATION, PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUCTION RELIEF, AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF, EXHIBIT A, EXHIBIT B, EXHIBIT C, EXHIBIT D, EXHIBIT E,

and was executed at **211 EAST 7TH STREET SUITE 620, AUSTIN, TX 78701** within the county of TRAVIS at **10:45 AM** on **Thu, Feb 26 2026,** by delivering a true copy to the within named

NATIONSTAR MORTGAGE LLC BY DELIVERING TO ITS REGISTERED AGENT CORPORATION SERVICE COMPANY C/O NEISHA GROSS

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

My name is **Brien McKinzie**, I am at least 18 years old, and my address is **205 TIMBERLINE ROAD, TEMPLE, TX 76502**, and **United States of America**. I declare under penalty of perjury that the foregoing is true and correct.

Executed in TRAVIS County, State of TX, on **February 26, 2026.**

_Brien McKinzie_

Brien McKinzie
Certification Number: PSC-24930
Certification Expiration: 08/31/2026

Unofficial Copy Office of Marilyn Burgess District Clerk

2/27/2026 8:35 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 111841041
By: Joanna Hernandez
Filed: 2/27/2026 8:35 PM

Receipt Number: 1101533
Tracking Number: 74614537

COPY OF PLEADING PROVIDED BY PLT

CAUSE NUMBER: 202611852

| | |
|---|---|
| PLAINTIFF: RHODES, TONYA P | In the 133rd Judicial |
| vs. | District Court of |
| DEFENDANT: CROSSCOUNTRY MORTGAGE LLC | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: CROSSCOUNTRY MORTGAGE LLC MAY BE SERVED WITH PROCESS THROUGH ITS REGISTERED AGENT

CT CORPORATION SYSTEM

1999 BRYAN STREET SUITE 900

DALLAS TX 75201-3136

Attached is a copy of PLAINTIFF'S ORIGINAL PETITION.

This instrument was filed on February 23, 2026, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this February 23, 2026.



*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: JAROD STIRRUP

Issued at request of:
JARRETT, LATOYA P
3033 CHIMNEY ROCK RD SUITE 610
HOUSTON, TX 77056
832-831-0833
Bar Number: 24073021



CAUSE NO. 202611852

TONYA RHODES, JAYLA RHODES §          IN THE DISTRICT COURT
§
             Plaintiff,       §
§          133RD JUDICIAL DISTRICT
VS.                           §
§
CROSSCOUNTRY MORTGAGE LLC, NATIONSTAR §
MORTGAGE LLC AND REIARI LLC
             Defendant.       §          HARRIS COUNTY, TEXAS

## AFFIDAVIT OF SERVICE

"The following came to hand on **Feb 24, 2026, 3:00 pm,**

CITATION, PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUCTION RELIEF, AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF, EXHIBIT A, EXHIBIT B, EXHIBIT C, EXHIBIT D, EXHIBIT E,

and was executed at **1999 BRYAN STREET SUITE 900, DALLAS, TX 75201** within the county of **DALLAS** at **12:46 PM** on **Thu, Feb 26 2026**, by delivering a true copy to the within named

CROSSCOUNTRY MORTGAGE LLC BY DELIVERING TO ITS REGISTERED AGENT CT CORPORATION SYSTEM

in person, having first endorsed the date of delivery on same."

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

My name is **Amanda Douglas**, I am at least 18 years old, and my address is **4701 CHARLES PLACE APT 1625, PLANO, TX 75093**, and **United States of America**. I declare under penalty of perjury that the foregoing is true and correct.

Executed in **DALLAS** County, State of TX, on **February 26, 2026.**

Amanda Douglas
Certification Number: 17378
Certification Expiration: 09/30/2027

Unofficial Copy Office of Marilyn Burgess District Clerk

3/2/2026 10:57 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 111869112
By: Joanna Hernandez
Filed: 3/2/2026 10:57 AM

Receipt Number: 1101533
Tracking Number: 74614540

COPY OF PLEADING PROVIDED BY PLT

CAUSE NUMBER: 202611852

PLAINTIFF: RHODES, TONYA P

vs.

DEFENDANT: CROSSCOUNTRY MORTGAGE LLC

In the 133rd Judicial

District Court of

Harris County, Texas

CITATION

THE STATE OF TEXAS
County of Harris

TO: REIARI LLC MAY BE SERVED WITH PROCESS THROUGH ITS REGISTERED AGENT INCORP INC

720 BRAZOS STREET STE 1115

AUSTIN TX 78701

Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION RELIEF.

This instrument was filed on February 23, 2026, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this February 23, 2026.

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: JAROD STIRRUP

Issued at request of:
JARRETT, LATOYA P
3033 CHIMNEY ROCK RD. STE. 610
HOUSTON, TX 77056
832-831-0833
Bar Number: 24073021

AFFIDAVIT ATTACHED

CAUSE NO. 202611852

| | | |
|---|---|---|
| TONYA RHODES, JAYLA RHODES | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | 133RD JUDICIAL DISTRICT |
| VS. | § | |
| | § | |
| CROSSCOUNTRY MORTGAGE LLC, NATIONSTAR | § | |
| MORTGAGE LLC AND REIARI LLC | | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF SERVICE

"The following came to hand on **Feb 24, 2026, 3:03 pm,**

**CITATION, PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUCTION RELIEF, AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF, EXHIBIT A, EXHIBIT B, EXHIBIT C, EXHIBIT D, EXHIBIT E,**

and was executed at **815 BRAZOS STREET DOWNTOWN, AUSTIN, TX 78701** within the county of TRAVIS at **01:40 PM** on **Fri, Feb 27 2026**, by delivering a true copy to the within named

**REIARI LLC BY DELIVERING TO ITS REGISTERED AGENT INCORP INC C/O GUY ROBERTS**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

My name is **Brien McKinzie**, I am at least 18 years old, and my address is **205 TIMBERLINE ROAD, TEMPLE, TX 76502**, and **United States of America**. I declare under penalty of perjury that the foregoing is true and correct.

Executed in TRAVIS County, State of TX, on **March 01, 2026.**

*Brien McKinzie*

**Brien McKinzie**
**Certification Number: PSC-24930**
**Certification Expiration: 08/31/2026**

Unofficial Copy Office of Marilyn Burgess District Clerk

3/6/2026 10:21 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 112090528
By: Joanna Hernandez
Filed: 3/6/2026 10:21 AM

## CAUSE NO. 2026-11852

| | | |
|---|---|---|
| **TONYA RHODES, JAYLA RHODES** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **133RD JUDICIAL DISTRICT** |
| | § | |
| **CROSSCOUNTRY MORTGAGE, LLC,** | § | |
| **NATIONSTAR MORTGAGE LLC, AND** | § | |
| **REIARI, LLC** | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, Tonya Rhodes and Jayla Rhodes (collectively referred to as "Plaintiffs"), in the above-entitled and numbered cause and moves this court to extend the Temporary Restraining Order ("TRO") issued herein on February 24, 2026, and as grounds would respectfully show unto the court the following:

## I. INTRODUCTION

1.     On February 24, 2026, the Court entered a Temporary Restraining Order ("TRO") in the above-styled and numbered cause. The TRO is currently set to expire on **March 10, 2026.**

2.     Citations to the Defendants CrossCountry Mortgage LLC, Nationstar Mortgage LLC, and REIARI LLC (collectively referred to as "Defendants") have been executed and filed.

3.     Plaintiffs request a brief extension of the TRO to allow sufficient time for Defendants to file their Answer in this case in order to make an appearance at the temporary injunction hearing.

## II. BASIS FOR EXTENSION

4.     Currently, Defendants are within their deadline for filing their Answers and responsive pleadings. Additional time is necessary to ensure that Defendants have a meaningful opportunity to respond to the allegations raised in Plaintiff's pleadings.

Unofficial Copy Office of Marilyn Burgess District Clerk

5.      An extension of the TRO will preserve the status quo between the parties while allowing Defendants the necessary time to prepare their response and for the Court to consider the issues presented in an orderly manner.

6.      The requested extension will not prejudice any party and will assist the Court in ensuring that the matter is fully and fairly presented.

## II. GOOD CAUSE AND CONSENT FOR EXTENSION OF TRO

7.      Pursuant to Texas Rule of Civil Procedure 680, a temporary restraining order "shall expire by its terms within such time after signing, not to exceed fourteen days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." This Rule allows the Court to grant an extension of the TRO upon a showing of "good cause" or consent of the restrained party.

8.      Good cause is not defined in the Rules of Civil Procedure, but generally includes a lack of bad faith on the part of the movant and a lack of prejudice to the non-movant. *See Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011).

9.      Counsel for the Moving Parties have consented to extend the TRO to allow the Defendants adequate time to file their Answer.

10.     Due to good cause shown here, Plaintiffs request the TRO be extended.

## III. REQUEST FOR EXTENSION

11.     Plaintiffs respectfully request that the Court extend the Temporary Restraining Order for an additional **14 days.**  Such extension will allow sufficient time for Defendants to file their Answer and for the parties to prepare for the temporary injunction hearing.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court to (1) Grant this Motion to Extend the Temporary Restraining Order; (2) Extend the TRO for an additional **14 days**, and (3) for such other and further relief to which it may they entitled.

Respectfully submitted,

**Jarrett Law Firm, PLLC**

**/s/ LaToya Jarrett**
LaToya Jarrett
State Bar No. 24073021
3033 Chimney Rock Rd, Suite 610
Houston, Texas 77056
Tel.: (832) 831-0833
Fax: (281) 783-2644
ljarrett@jarrettlawfirm.com
*Attorney for Plaintiffs, Tonya Rhodes*
*and Jayla Rhodes*

Page 3

## CERTIFICATE OF SERVICE

I, LaToya Jarrett, do hereby certify that a true and correct copy of the foregoing instruments have been served upon counsel of record under the Texas Rules of Civil Procedure, via electronic filing notification or facsimile on <u>March 6th, 2026</u>.

<u>*/s/ LaToya Jarrett*</u>
**LaToya Jarrett**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Dana Bofil on behalf of LaToya  Jarrett
Bar No. 24073021
paralegal@jarrettlawfirm.com
Envelope ID: 112090528
Filing Code Description: Motion (No Fee)
Filing Description: Plaintiffs' Motion to Extend Temporary Restraining Order
Status as of 3/6/2026 11:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| LaToya  PJarrett | | ljarrett@jarrettlawfirm.com | 3/6/2026 10:21:28 AM | SENT |
| LaToya  PJarrett | | ljarrett@jarrettlawfirm.com | 3/6/2026 10:21:28 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

3/6/2026 10:21:28 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 112090528
By: HERNANDEZ, JOANNA E
Filed: 3/6/2026 10:21:28 AM

CAUSE NO. <u>2026-11852</u>

| | | |
|---|---|---|
| **TONYA RHODES, JAYLA RHODES** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **133RD JUDICIAL DISTRICT** |
| | § | |
| **CROSSCOUNTRY MORTGAGE, LLC,** | § | |
| **NATIONSTAR MORTGAGE LLC, AND** | § | |
| **REIARI, LLC** | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

**PROPOSED ORDER GRANTING PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

On this day, the Court considered Plaintiffs' Motion to Extend Temporary Restraining Order. After reviewing the Motion and considering the arguments and applicable law, the Court finds that the Motion should be **GRANTED.**

The Court further finds that good cause exists to extend the Temporary Restraining Order previously issued on February 24, 2026, and that the extension will preserve the status quo while allowing the Defendants time to file their Answer in this case.

IT IS THEREFORE ORDERED that the Temporary Restraining Order entered on February 24, 2026, is hereby **EXTENDED** for an additional **14 days**, through and including _____, **2026,** unless further extended by order of this Court.

IT IS FURTHER ORDERED that all terms and provisions of the Temporary Restraining Order signed on February 24, 2026, shall remain in full force and effect during the period of this extension.

SIGNED on this _____ day of _____, 2026

_____
**PRESIDING JUDGE**
133RD JUDICIAL DISTRICT COURT
HARRIS COUNTY, TEXAS

Unofficial Copy Office of Marilyn Burgess District Clerk

3/6/2026 10:21:28 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 112090528
By: HERNANDEZ, JOANNA E
Filed: 3/6/2026 10:21:28 AM

CAUSE NO. **2026-11852**

| | | |
|---|---|---|
| **TONYA RHODES, JAYLA RHODES** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **133RD JUDICIAL DISTRICT** |
| | § | |
| **CROSSCOUNTRY MORTGAGE, LLC,** | § | |
| **NATIONSTAR MORTGAGE LLC, AND** | § | |
| **REIARI, LLC** | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## NOTICE OF ORAL HEARING ON PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

COMES NOW, Plaintiffs, Tonya Rhodes and Jayla Rhodes (collectively referred to as "Plaintiffs") and file their Notice of Oral Hearing on Plaintiffs' Motion to Extend Temporary Restraining Order in the above-styled and numbered cause and state that the oral hearing on the motion will be heard on the 9th day of March 2026 at 3:00 p.m. in the 133rd Judicial District Court of Harris County, Texas.

Respectfully submitted,

**Jarrett Law Firm, PLLC**

**/s/ LaToya Jarrett**
LaToya Jarrett
State Bar No. 24073021
3033 Chimney Rock Rd, Suite 610
Houston, Texas 77056
Tel.: (832) 831-0833
Fax: (281) 783-2644
ljarrett@jarrettlawfirm.com
*Attorney for Plaintiffs, Tonya Rhodes*
*and Jayla Rhodes*

Unofficial Copy Office of Marilyn Burgess District Clerk

**CERTIFICATE OF SERVICE**

I certify that a true copy of the Notice of Oral Hearing on Plaintiffs' Motion to Extend Temporary Restraining was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on <u>March 6th, 2026.</u>

*/s/ LaToya Jarrett*
LaToya Jarrett

Page 2

3/6/2026 10:21:28 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 112090528
By: HERNANDEZ, JOANNA E
Filed: 3/6/2026 10:21:28 AM

Pgs-1

CAUSE NO. **2026-11852**

| | | |
|---|---|---|
| **TONYA RHODES, JAYLA RHODES** | § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* | § | |
| | § | |
| **VS.** | § | **133RD JUDICIAL DISTRICT** |
| | § | |
| **CROSSCOUNTRY MORTGAGE, LLC,** | § | |
| **NATIONSTAR MORTGAGE LLC, AND** | § | |
| **REIARI, LLC** | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## PROPOSED ORDER GRANTING PLAINTIFFS' MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

On this day, the Court considered Plaintiffs' Motion to Extend Temporary Restraining Order. After reviewing the Motion and considering the arguments and applicable law, the Court finds that the Motion should be **GRANTED.**

The Court further finds that good cause exists to extend the Temporary Restraining Order previously issued on February 24, 2026, and that the extension will preserve the status quo while allowing the Defendants time to file their Answer in this case.

IT IS THEREFORE ORDERED that the Temporary Restraining Order entered on February 24, 2026, is hereby **EXTENDED** for an additional **14 days**, through and including 3:00 p.m. March 23 , **2026,** unless further extended by order of this Court.

IT IS FURTHER ORDERED that all terms and provisions of the Temporary Restraining Order signed on February 24, 2026, shall remain in full force and effect during the period of this extension.

SIGNED on this _____ day of _____, 2026

Signed:
3/9/2026

_____
**PRESIDING JUDGE**
133RD JUDICIAL DISTRICT COURT
HARRIS COUNTY, TEXAS

Unofficial Copy Office of Marilyn Burgess District Clerk